UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

ALFRED M. PARENT               :

                                :

       v.                :     C.A. No. 05-375A

                                :

JO ANNE B. BARNHART,       :
Commissioner of Social Security   :

## MEMORANDUM AND ORDER

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Supplemental Security Income Benefits ("SSI") under the Social Security Act ("Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on August 30, 2005 seeking to reverse the decision of the Commissioner. On February 22, 2006, Plaintiff filed a Motion for Summary Judgment, or Alternatively, for Remand. The Commissioner filed a Motion to Affirm her decision on April 5, 2006.

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Based upon my review of the entire record, independent legal research, and the legal memoranda filed by the parties, I find that there is substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Thus, I order that the Commissioner's Motion to Affirm (Document No. 8) be GRANTED and that Plaintiff's Motion for Summary Judgment (Document No. 7) be DENIED.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for SSI benefits on April 24, 2003 alleging disability since October 2001. (Tr. 64-68). The application was denied initially in June 2003 (Tr. 26, 28-30) and on reconsideration in September 2003. (Tr. 27, 32-34). On April 1, 2005, a hearing was held before Administrative Law Judge Barry H. Best (the "ALJ"), at which Plaintiff, represented by counsel, and a vocational expert (VE), testified. (Tr. 194-220).[1] The ALJ issued a decision on April 27, 2005, finding that Plaintiff was not disabled. (Tr. 13-25). The Appeals Council denied Plaintiff's request for review on June 29, 2005. (Tr. 7-10). A timely appeal was then filed with this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that the ALJ's decision was not based on substantial evidence. Plaintiff also argues that the ALJ erred in failing to call a medical expert to the Plaintiff's hearing and that the ALJ did not have a sufficient basis to credit the VE's testimony. The Commissioner argues that substantial evidence exists in the record to support the final decision that Plaintiff was not disabled within the meaning of the Social Security Act.

## III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health

---

[1] On October 7, 2004, an initial hearing before the ALJ was continued without any testimony in order to permit the completion of a consultative examination of Plaintiff. (Tr. 192). This examination took place on December 31, 2004. (Ex. 7F).

and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (*per curiam*); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (*per curiam*); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)

(remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-10 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-92 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. With a sentence six remand, the parties must return to the court after remand to file modified

findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV.   DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.   Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.   Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.   Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.   The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E.    Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11ᵗʰ Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5ᵗʰ Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.   Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C.

§ 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including

pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with

the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs

and laboratory findings show medical impairments which reasonably could be expected to produce

the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the

following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and
> intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity,
> environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain
> medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's

statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must

articulate specific and adequate reasons for doing so, or the record must be obvious as to the

credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly

articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829

F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.   APPLICATION AND ANALYSIS

Plaintiff was fifty-one years old at the time of the hearing. (Tr. 65, 199). He completed high school and took two courses in the evaluation of automobiles and heavy equipment. (Tr. 199). Plaintiff's past work was as an automobile damage insurance appraiser. (Tr. 74, 87-89, 200). The VE testified that this was light, skilled work. (Tr. 212).

Plaintiff testified that he lives alone in a small cottage, stays home most of the time and watches television or listens to music, but goes out to the market once every two or three days and goes to a methadone clinic once a week. (Tr. 199, 204-205). Plaintiff testified that he cooks for himself, does housework and laundry, drives, has one or two friends besides his family and goes over to their house and sees them about once every ten days or so. (Tr. 204-206). Plaintiff reported that he is very close with his family and sees them about as often. (Tr. 207). Plaintiff testified that he is not paranoid about leaving his house, but does not go out that often because he feels more comfortable in his house. (Tr. 209).

Plaintiff testified that he last worked in 1999 when he was an automobile insurance appraiser. (Tr. 200). He testified that he left that job because of a combination of problems, such as getting to work consistently and arguing with customers; he has not applied for any job since that time. (Tr. 200-201).

Plaintiff testified that he has sleep problems, difficulty getting along with people and a short attention span. (Tr. 202). He testified that he lies down for about sixteen hours per day including the ten hours per day that he sleeps. (Tr. 208). He testified that he sees a counselor at least once a month at Adult Rehabilitation Institute ("ARI") where he is in the methadone program and that the counselor has never suggested that he see a psychiatrist or psychologist. (Tr. 202-203).

The only medications that Plaintiff indicated he was taking were Effexor, which helps with his feelings of depression; Lipitor for elevated cholesterol; and methadone. (Tr. 187, 204).

Mr. McGinn, the VE, testified that almost all jobs require at least occasional interaction with other people but that there are jobs that do not require any more than occasional interaction, such as a night shift janitor. (Tr. 212-213). The VE testified that there are about 1,000 of these positions in the local economy. (Tr. 213-214).

Plaintiff alleged being disabled because of psychological and mental impairments. (Tr. 73, 188-89). Plaintiff, however, was not undergoing any psychological treatment. (Tr. 75-77). His SSI claim was denied in June 2003 at the initial level due to a lack of medical evidence showing any impairment, after Plaintiff's apparent failure to cooperate in a consultative mental examination. (Tr. 121).

Later that month, Plaintiff was referred by his attorney to a psychiatrist, Dr. James Sullivan, for an evaluation. (Tr. 123-129). Plaintiff was aware that the examination was for the purpose of

-12-

a disability determination. (Tr. 123). Plaintiff told Doctor Sullivan that between the ages of sixteen and thirty-six he worked in his family business, and often did not work for extended periods, although his family still gave him money. (Tr. 124). Plaintiff reported that he was addicted to heroin and cocaine throughout the majority of his life until 1997 and had maintained abstinence from drug use since that time. (Tr. 125). During his evaluation, Plaintiff was polite and cooperative, and denied daily symptoms of depression. (Tr. 126). Plaintiff described feelings of poor concentration and task persistence, but Dr. Sullivan opined that Plaintiff's memory and cognition appeared to be intact. (Tr. 126).

Plaintiff told Dr. Sullivan that he was "a loner" who kept pretty much to himself and that he had infrequent contact with his family. (Tr. 125). Dr. Sullivan diagnosed Plaintiff's primary disability as mixed personality disorder (schizoid/anti-social type), and rated his global assessment of functioning ("GAF") at 45.[2] (Tr. 126).

Dr. Sullivan opined that Plaintiff was "totally disabled regarding his ability to maintain the ongoing responsibilities of sustained work." (Tr. 126). He opined that Plaintiff had a moderately severe impairment in his ability to relate to others, respond appropriately to supervision or coworkers, respond to work pressure, and to perform complex or varied tasks. (Tr. 128-129). He also opined that Plaintiff had a moderately severe restriction in his daily activity, such as working around his house and interacting with friends or neighbors and a moderately severe constriction of interest. (Tr. 128). Dr. Sullivan opined that Plaintiff had a moderate limitation in his ability to perform repetitive tasks and to understand, remember and carry out instructions (Tr. 128-129),

---

[2] A GAF rating between 41 and 50 represents a person with some serious symptoms or any serious impairment in social, occupational, or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).

despite having concluded that his memory and cognition appeared to be intact. (Tr. 126). Although his evaluation in June 2003 was the only time he saw Plaintiff, Dr. Sullivan opined that these limitations had existed at this level of severity since 1997. (Tr. 129).

On September 15, 2003, Dr. Litchman reviewed Dr. Sullivan's evaluation report and Plaintiff's statements about his activities of daily living. (Tr. 142). Based upon this review, Dr. Litchman prepared a psychiatric review techniques form. (Tr. 130-143). Dr. Litchman concluded that Plaintiff's personality disorder was not severe (Tr. 130) and that it resulted in only mild restriction of his daily activities; mild difficulty maintaining social functioning; and mild deficiencies of concentration, persistence, or pace; but had never resulted in extended periods of deterioration or decompensation. (Tr. 140). In reaching these conclusions, Dr. Litchman noted that no objective evidence of concentration or memory deficits were described in Dr. Sullivan's evaluation of Plaintiff. (Tr. 142). Plaintiff had reported that he lived alone, prepared his own meals, cleaned the house without assistance, did his own shopping, watched television, visited friends and family and got along with family, friends and neighbors. (Tr. 95-97). In assessing the degree of functional limitation that resulted from Plaintiff's personality disorder, Dr. Litchman considered Dr. Sullivan's evaluation in light of Plaintiff's 2003 report of his daily activities. (Tr. 142).

In October 2004, the ALJ ordered that Plaintiff be referred for a consultative examination in order to more fully develop the record. (Tr. 192-193). Dr. Parmentier conducted that examination on December 31, 2004. (Tr. 158-162). Plaintiff's complaint at the time of his examination was that he could not get along with people, that he does not go out of the house, and that some days he does not even get out of bed. (Tr. 158, 159). When Dr. Parmentier examined him, Plaintiff arrived on time and was appropriately dressed, alert and oriented. (Tr. 160). Plaintiff, however, was quite

-14-

defensive, pressured, argumentative and was easy to anger. (Tr. 160). Upon testing Plaintiff's cognition, memory and concentration, Dr. Parmentier noted that Plaintiff could register and recall information, could spell the word "world" both forward and backwards, and could perform serial sevens, digit span testing and other components of a mental status examination without deficit. (Tr. 160).

Dr. Parmentier diagnosed Plaintiff's conditions as a mood disorder not otherwise specified, a personality disorder not otherwise specified with schizoid and anti-social traits and rated his GAF at 50/55[3]. (Tr. 161).

At the hearing, the ALJ asked the VE if there were jobs that could be performed by a person who worked pretty much on his own except for occasional conduct with supervisors. (Tr. 212). The VE testified that the job of a night shift janitor or light maintenance worker was such a job. (Tr. 213). The VE also testified that there were about 1,000 such jobs in the region. (Tr. 213). He indicated that this figure represented about 5% of all janitorial positions and that the 1,000 figure was a reasonable estimate of the number of such jobs. (Tr. 213-214). The VE testified that the 1,000 figure was a "very conservative" estimate. (Tr. 219). The VE testified that these jobs are typically in large buildings where one janitor working alone might clean one to four floors. (Tr. 216).

## A.    The ALJ's RFC Assessment is Supported by Substantial Evidence

In his decision, the ALJ found that Plaintiff's personality disorder was a severe impairment but not of listing-level severity. (Tr. 18). The ALJ then concluded that Plaintiff retained the residual

---

[3] A GAF rating between 51 and 60 is indicative of an individual who has moderate psychological symptoms or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994). The higher the rating within a given range, the less severe the difficulty.

-15-

functional capacity ("RFC") to perform work at all exertional levels, but with moderate limitations in maintaining attention and concentration, and in dealing appropriately with the public, co-workers and supervisors. (Tr. 20).

Citing Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 17 (1st Cir. 1996), Plaintiff argues that the "ALJ, as a lay person, is not qualified to interpret raw data in a medical record" and that he erroneously relied upon his own lay opinion of how a personality disorder works. This Court disagrees.

The record as a whole, including Plaintiff's testimony, Dr. Litchman's non-examining assessment (Ex. 3F) and Dr. Parmentier's consultative examination (Ex. 7F), supports the ALJ's RFC finding. The ALJ accurately notes that the record contains "virtually no treatment records" for Plaintiff's mental impairment. (Tr. 21). Although Plaintiff alleges disability as of October 2001, the record contains no medical records prior to October 2002. Plaintiff has not received any treatment from a psychiatrist or psychologist and his methadone program counselor has never suggested such treatment. (Tr. 202-203). The records from Plaintiff's treating medical doctor contain references to anxiety and depression but no mental health treatment referral. (Ex. 5F). Plaintiff was prescribed Effexor, and in December 2002 was reported to have an "excellent response" to it. (Tr. 152). In August 2003, anxiety and depression were noted, and Plaintiff was directed to "resume" the Effexor. (Tr. 154).

Plaintiff contends that this Court cannot consider the report of Dr. Litchman, a non-examining state-agency psychologist, since "the ALJ did not rely on [it] regarding [his] mental capacity." Pl.'s Mem. in Support at p. 9. Plaintiff's argument has no basis in law or fact. The ALJ considered all of the evidence of record including the evaluations by Dr. Sullivan and Dr. Parmentier

-16-

as well as the assessment by Dr. Litchman. (Tr. 21-22). The ALJ agreed with Dr. Litchman's assessment in which he indicated that Dr. Sullivan's conclusions as to the severity of Plaintiff's limitations were not supported by medical findings or by Plaintiff's reports of his daily activity. (Tr. 22).

At that time, Plaintiff reported that he lived alone, took care of his personal needs, prepared his own meals, cleaned the house by himself and did his own shopping. (Tr. 95-96). Although he reported not reading because of a lack of concentration, Plaintiff watched television (educational shows, sports events and movies) for eight to ten hours per day and spent about four hours per week watching television with his niece. (Tr. 96). He reported that he got along with his family, friends, neighbors and co-workers; and that he visited his mother occasionally, and they would talk, have dinner and watch television. (Tr. 97). Although Plaintiff told Dr. Sullivan that he has "infrequent contact" with his family (Tr. 125), he testified before the ALJ that he sees his family "once every ten days or so." (Tr. 207).

Because Dr. Litchman's assessment was prepared before Plaintiff was examined by Dr. Parmentier, the ALJ appropriately reexamined the record to take Dr. Parmentier's examination into account. (Tr. 22). The ALJ ultimately found that Plaintiff had moderate limitations in maintaining social functioning and in maintaining concentration, persistence and pace (Tr. 18), rather than mild limitations in these two areas as Dr. Litchman had indicated. (Tr. 140).

When Plaintiff was examined by Dr. Parmentier, he reportedly was "pressured and argumentative, easy to anger" and his mood appeared "irritable, easy to anger" (Tr. 160), although he had been "polite and cooperative throughout the evaluation," when he was previously examined by Dr. Sullivan. (Tr. 126). Plaintiff told Dr. Parmentier that on most days he did not leave his

-17-

house, get dressed and on some days, did not even get out of bed. (Tr. 159). Upon testing of cognition, memory and concentration, Dr. Parmentier noted that Plaintiff could register and recall information, could spell the word "world" both forward and backwards, and could perform serial sevens, digit span testing and other components of a mental status examination without deficit. (Tr. 160). With respect to concentration, Dr. Parmentier noted that Plaintiff's cognition appeared adequate, but opined that task persistence was poor based upon Plaintiff's report. (Tr. 161).

Considering Dr. Parmentier's evaluation of Plaintiff, along with the earlier evaluation by Dr. Sullivan, the assessment of Dr. Litchman and Plaintiff's activities, as reported throughout the record, the ALJ properly found that Plaintiff had moderate limitations in maintaining attention and concentration and in dealing appropriately with others including the public, co-workers and supervisors. Plaintiff contends that the ALJ erred in not having a medical expert assess his functional capacity (Pl.'s Mem. in Support at 8); however, the responsibility for determining a claimant's RFC ultimately rests with the ALJ, not with a medical expert, and the record contains substantial medical evidence supporting the ALJ's findings. Although the Commissioner must consider medical opinions about a claimant's RFC, the final responsibility for deciding this issue is reserved to the Commissioner. 20 C.F.R. § 416.927(e)(2). In making that determination, the ALJ must consider all of the evidence in the record, and the ALJ properly did so in this case.

Finally, Plaintiff argues that the ALJ erred in considering Plaintiff's past work history and asserts that he should only have analyzed Plaintiff's personality disorder "during the time [he] alleges disability." (Pl.'s Mem. in Support at p. 10). In his decision (Tr. 22 at n.9), the ALJ indicated that Plaintiff's assertions as to his ability to get along with co-workers and supervisors must be considered in light of Plaintiff's employment history and the stable nature of his impairment.

Contrary to Plaintiff's argument, the record contains adequate medical support for the ALJ's observation. First, the ALJ quotes from a medical source (DSM-IV). (Tr. 20 at n.4). Second, although Dr. Sullivan opines Plaintiff's current inability to work, he notes Plaintiff's "lifelong pattern of irresponsibility stemming from an underlying personality disorder," and his prior work history with such disorder. (Tr. 124-126). Finally, Dr. Litchman stated that Dr. Sullivan's disability conclusion was "not supported by the longitudinal data" and noted that Plaintiff "has been able to sustain worklike [sic] activity with his personality disorder." (Tr. 142).

**B.      The ALJ Did Not Err in Crediting the VE's Testimony**

Having found that Plaintiff had the RFC to perform work at any exertional level, allowing for a moderate limitation in the ability to maintain attention and concentration and to deal appropriately with others, including the public, co-workers and supervisors, the ALJ had to determine if Plaintiff could perform his past work or other work that existed in significant numbers in the national economy. The ALJ found that Plaintiff could not perform his past relevant work as an appraiser (light skilled work) because of his non-exertional limitations. (Tr. 23, 25 at Finding 25). Because Plaintiff's impairment resulted in only non-exertional limitations, the ALJ relied upon VE testimony to determine if there was work that existed in significant numbers in the national economy that an individual of his age, education, vocational experience, and his functional limitations could perform. (Tr. 23-24, 212-214).

The VE testified that an individual with Plaintiff's RFC could perform the job of a night-shift janitor or light maintenance worker. (Tr. 213). The VE testified that there were about 1,000 such jobs in the region, representing about 5% of all janitorial positions. (Tr. 213-214). The VE testified that the 1,000 figure was a "very conservative" estimate. (Tr. 219).

-19-

Plaintiff notes that the VE identified only one job. (Pl.'s Mem. in Support at 11). There is, however, no requirement that a claimant be able to perform several different jobs, only that the job that he can perform exists in significant numbers. Furthermore, the VE testified that the night-shift janitor job was "an example" of the work that could be performed. (Tr. 213).

Plaintiff now appears to challenge the VE's testimony that there are about 1,000 of these jobs in the regional economy. (Pl.'s Mem. in Support at 12). The VE was called for the express purpose of testifying as to jobs that could be performed with various limitations and the number of such jobs. Plaintiff did not present any objection to the VE testifying as a vocational expert. As such an expert, the VE testified that his estimate that there were 1,000 night-shift janitorial jobs in the regional economy was a conservative estimate and represented only about 5% of all of the janitorial jobs in the regional economy. The ALJ did not err in crediting the VE's testimony in this regard. Further, Plaintiff has not presented any evidence that refutes the VE's testimony.

## VI.   CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion to Affirm (Document No. 8) be GRANTED and that the Plaintiff's Motion for Summary Judgment (Document No. 7) be DENIED. Final Judgment shall enter in favor of the Commissioner.


LINCOLN D. ALMOND
United States Magistrate Judge
April 26, 2006

-20-